# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
KELLY DONNA PARSLEY and STEPHANIE           :
MIGLINO, on behalf of themselves and on behalf :
of other similarly-situated individuals,              :        Index No. 17-cv-00097 (GRB)
                                                      :
                             Plaintiffs,              :
                                                      :
         -against-                                    :
                                                      :
BROADHOLLOW HOSPITALITY LLC, d/b/a          :
JEWEL RESTAURANT, and RUBIE'S               :
COSTUME COMPANY INC.,                        :
                                                      :
                             Defendants.              :
------------------------------------------------------------- X

## SETTLEMENT AGREEMENT AND RELEASE

     This Settlement Agreement and Release is entered into by and between Plaintiffs Kelly Donna Parsley and Stephanie Miglino ("Plaintiffs"), on behalf of themselves and the putative Class Members (defined below), and Defendants Broadhollow Hospitality LLC d/b/a Jewel Restaurant and Rubie's Costume Company, Inc. ("Defendants," and together with Plaintiffs and Class Members (through Plaintiffs as their representatives), the "Parties").

**1.**   **RECITALS AND BACKGROUND**
     WHEREAS, on January 6, 2017, Plaintiffs Kelly Donna Parsley and Stephanie Miglino filed a putative Collective and Class Action Complaint in the United States District Court for the Eastern District of New York bearing the Civil Action Number 2:17-cv-00097 (the "Action" or "Litigation");

     WHEREAS, unless stated otherwise, Plaintiffs intend to file a motion with the Court seeking to certify the Litigation for settlement purposes only as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and as a collective action pursuant to 29 U.S.C. § 216(b) with respect to all Servers, Bussers, Runners, Bartenders, Barbacks, and other similarly tipped employees, who worked at Defendant Broadhollow Hospitality LLC's business located at 400 Broadhollow Road, Melville, New York 11747, and known as "Jewel Restaurant," during the Relevant Time Period (defined below);

     WHEREAS, the Parties engaged in extensive discovery during the course of the Litigation in connection with the potential settlement of this matter;

     WHEREAS, on December 13, 2017 and on January 8, 2018, the Parties participated in two extensive settlement conferences before the Honorable Gary R. Brown, United States Magistrate Judge;

WHEREAS, at the second January 8, 2018 settlement conference, the Parties agreed upon a resolution of Plaintiffs' class and collective action claims asserted in the Litigation;

WHEREAS, Defendants have denied and continue to deny all of the material allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of resolving this Litigation, and without admitting any fault, wrongdoing, or liability, Defendants have agreed to have an administrator jointly selected by Plaintiffs' counsel and Defendants' counsel disseminate a notice of settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure to all Class Members (as defined below).

WHEREAS, the purpose of this Settlement Agreement and Release is to settle fully and finally all New York State Law Claims and Federal Fair Labor Standards Act ("FLSA") Claims among Plaintiffs, Class Members, and Defendants, including all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs and Plaintiffs' Counsel have evaluated the merits of the claims made against Defendants and the impact of this Settlement Agreement and Release on Plaintiffs and Class Members. Based upon Plaintiffs' and Plaintiffs' Counsel's evaluation of a number of factors and recognition of the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery, might result in a recovery that is less favorable than this settlement, and/or might result in a recovery that cannot be obtained for several years, Plaintiffs and Plaintiffs' Counsel are satisfied that the terms and conditions of this Settlement Agreement and Release are fair, reasonable, and adequate and that this Settlement Agreement and Release is in the best interests of Plaintiffs and Class Members. Plaintiffs and Plaintiffs' counsel have also agreed to have an administrator jointly selected by Plaintiffs' counsel and Defendants' counsel disseminate a notice of settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure to all Class Members (as defined below).

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Settlement Agreement and Release, as well as the good and valuable consideration provided herein, the Parties agree to a full and complete settlement of the Litigation in accordance with the following terms and conditions:

## 2. **DEFINITIONS**

The defined terms set forth in this Settlement Agreement and Release have the meanings ascribed to them below.

2.1    **"Action" or "Litigation."** The terms "Action" and "Litigation" refer to the lawsuit filed by Plaintiffs in the United States District Court for the Eastern District of New York styled Parsley v. Broadhollow Hospitality LLC d/b/a Jewel Restaurant et al., No. 2:17-cv-00097 (JS)(GRB).

2.2    **"Administrator" or "Claims Administrator."** The terms "Administrator" and "Claims Administrator" refer to the administrator jointly selected by Plaintiffs'

counsel and Defense counsel to mail the Notices of Settlement and otherwise administer the Settlement.

2.3 **"Aggregate Point Value."** The term "Aggregate Point Value" refers to the aggregate number of points accrued by all Class Members in accordance with the Allocation Formula.

2.4 **"Agreement" or "Settlement."** The terms "Agreement" and "Settlement" mean this Settlement Agreement and Release.

2.5 **"Allocation Formula."** The term "Allocation Formula" refers to the method which will be used by the Claims Administrator to determine the Individual Settlement Amounts for each Class Member.

2.6 **"Class" or "Class Member(s)."** The terms "Class" and "Class Member(s)" refers to all individuals who have opted in this Action or who have worked in the positions of Servers, Bussers, Runners, Bartenders and Barbacks and any other tipped employee, ("tipped positions") other than Faith Cardino, who worked at Jewel Restaurant in a tipped position for at least one (1) hour during the Relevant Time Period, and who do not opt-out of the Settlement as provided herein. Notwithstanding the foregoing, the Class also specifically includes Madison Giannatasio who previously opted into the Litigation.

2.7 **"Class Counsel" or "Plaintiffs' Counsel."** The terms "Class Counsel" and "Plaintiffs' Counsel" refer to Wigdor LLP, and in particular Lawrence M. Pearson, Esq. and Tanvir H. Rahman, Esq.

2.8 **"Class Member List."** The term "Class Member List" refers to a list of all Class Members containing each of their: (i) names; (ii) last known addresses, phone numbers and email addresses (if known and to the extent that such records exist); (iii) job positions; (iv) total hours worked in a tipped position during the Relevant Time Period, and for Plaintiffs, Chanchal Bist, Kyle Bowers, Mason G. Connor, Nicolette K. De Martino, Jared M. Delin, Amanda Farnum, Summer Mahmoud, Angela F. McAllister, Madison Giannatasio, and Tanya N. Tabinsky who filed opt-in or consent forms in the Action, their total hours worked in a tipped position from January 6, 2014 to January 8, 2018; (v) dates of employment during the Relevant Time Period; and (vi) social security numbers, if available, contained in a confidential document that Defendants shall provide to Plaintiffs' Counsel and the Claims Administrator. The Class Member List is to be used by Plaintiffs' Counsel and the Claims Administrator to effectuate the Settlement; it may not be copied, disseminated, or used for any other purpose.

2.9 **"Court."** The term "Court" refers to the United States District Court for the Eastern District of New York, the Honorable Gary R. Brown presiding.

2.10 **"Days."** The term "days" refers to calendar days, unless otherwise specified.

**2.11**   **"Defendants."**  The term "Defendants" refers to Broadhollow Hospitality LLC d/b/a Jewel Restaurant, and Rubie's Costume Company Inc.

**2.12**   **"Defense Counsel" or "Defendants' Counsel."**   The terms "Defense Counsel" and "Defendants' Counsel" refer to Meyer, Suozzi, English & Klein, P.C., and in particular, Lois C. Schlissel, Esq. and Andrew J. Turro, Esq.

**2.13**   **"Fairness Hearing."**  The term "Fairness Hearing" refers to the anticipated hearing before the Court relating to the Motion for Final Approval.

**2.14**   **"Final Effective Date."**  The term "Final Effective Date" refers to the date that is 30 days after the Court has entered a Final Order and Judgment of Dismissal with Prejudice approving this Agreement, provided that the time to appeal the Final Order and Judgment of Dismissal with Prejudice has expired and no notice of appeal has been filed.  However, in the event that a notice of appeal is filed, the Final Effective Date shall be the day after the date of the following event that occurs last, whichever is later: (1) any appeal from the Final Order and Judgment of Dismissal with Prejudice has been finally dismissed; (2) the Final Order and Judgment of Dismissal with Prejudice has been affirmed on appeal in a form substantially identical to the form of the Final Order and Judgment of Dismissal with Prejudice entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order and Judgment of Dismissal with Prejudice has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order and Judgment of Dismissal with Prejudice in a form substantially identical to the form of the Final Order and Judgment of Dismissal with Prejudice entered by the Court.

**2.15**   **"Final Order and Judgment of Dismissal with Prejudice."**  The term "Final Order and Judgment of Dismissal with Prejudice" refers to the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement and dismissing the Action with prejudice.

**2.16**   **"FLSA Claims."**  The term "FLSA Claims" refers to all federal wage and hour claims that were or could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of any one or more of the Plaintiffs or Class Members, including, but not limited to, all claims for unpaid wages, minimum wages, overtime wages, tip credit claims, tip misappropriation claims, service and/or administrative charge claims, improper deductions, failure to provide required notices and/or wage statements, retaliation, any other related wage and hour claims, and all "derivative benefit claims" (defined as claims for benefits—both ERISA and non-ERISA benefits—resulting from an alleged failure to pay wages, including, but not limited to, minimum or overtime wages), as well as any liquidated damages, interest, attorneys' fees, costs, penalties, taxes, claims administration fees, courts costs and incentive awards related to such awards.

2.17    **"Implementing Order."**  The term "Implementing Order" refers to the order entered by the Court: (i) effectuating the Settlement; (ii) approving the Notice of Settlement; and (iii) directing the manner and timing of the publishing of the Notice of Settlement to the Class.

2.18     **"Individual Settlement Amounts."**  The term "Individual Settlement Amounts" refers to each Class Member's estimated individual allocated share of the Net Settlement Fund pursuant to the Allocation Formula.

2.19    **"Net Settlement Fund."**  The term "Net Settlement Fund" refers to the Settlement Fund after subtracting the Service Awards, Claims Administrator fees, and Court-approved attorney fees and expenses.

2.20    **"Notice of Settlement."**  The term "Notice of Settlement" refers to the Court-approved Notice of Proposed Settlement and Fairness Hearing, which provides Class Members with notice of the opportunity to participate in, opt-out of and/or object to the proposed settlement.

2.21    **"Objector."**  The term "Objector" refers to any Class Member who properly files an objection to this Agreement; the term does not include any individual who opts-out of the Settlement.

2.22    **"Opt-out Period."**  The term "Opt-out Period" refers to the 45 day period after the initial mailing of the Notice of Settlement in which each putative Class Member may opt-out of the Settlement.  To the extent a Class Member's Notice of Settlement is returned or otherwise determined to be undeliverable, such Class Members' Opt-out Period shall be extended to include 15 days from the date of any subsequent mailing (but no less than the original 45 days).

2.23    **"Opt-out Statement."**  The term "Opt-out Statement" refers to a written signed statement from a Class Member who has decided to opt-out of and not be included in the Settlement.  Any Class Member who does not timely submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not redeem any one or more Settlement Check, and further waives and releases all FLSA claims if he or she redeems one or more Settlement Checks. Any Plaintiff who does not timely submit an Opt-out Statement waives and releases all State Law Claims and FLSA Claims, even if she does not redeem any one or more Settlement Check.

2.24    **"Parties."** The term "Parties" refers collectively to Plaintiffs, Defendants, and Class Members (through Plaintiffs as their representatives).

2.25    **"Plaintiffs."**  The term "Plaintiffs" refers to Plaintiffs Kelly Donna Parsley and Stephanie Miglino.  For avoidance of confusion, Plaintiff Parsley and Plaintiff Miglino are also Class Members.

2.26    **"Preliminary Approval Motion**." The term "Preliminary Approval Motion" refers to Plaintiffs' anticipated motion (to be filed for settlement purposes only) for class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, for collective action certification pursuant to 29 U.S.C. § 216(b) and to approve the proposed Implementing Order.

2.27    **"Redemption Period."** The term "Redemption Period" shall refer to the period in which a Class Member must redeem or cash a Settlement Check before it is voided. The Redemption Period shall be 90 days for the first distribution from the Settlement Fund and 90 days for any subsequent distribution from the Settlement Fund.

2.28    **"Relevant Time Period."** The term "Relevant Time Period" refers to the period of time between **January 6, 2011** and **January 8, 2018**.

2.29    **"Service Awards."** The term "Service Awards" shall mean separate payments made to Plaintiffs in recognition of their services rendered to the Class Members.

2.30    **"Settlement Account."** The term "Settlement Account" refers to a qualified account established by the Administrator, pursuant to this Agreement, at a bank acceptable to the Parties. The Settlement Account shall be funded by Defendants with the necessary funds to administer the Settlement.

2.31    **"Settlement Checks."** The term "Settlement Checks" refers to the checks issued to Class Members and to the *cy pres* designee from the Settlement Account by the Administrator in accordance with the terms of this Agreement.

2.32    **"Settlement Fund."** The term "Settlement Fund" refers to the sum total of all payments Defendants will make pursuant to this Agreement into the Settlement Account, which shall total $380,000.00. For the avoidance of doubt, the Settlement Fund shall be inclusive of all payments to the Class Members, Service Awards, all attorneys' fees and costs that are awarded by the Court, and all Claims Administrator fees. Under no circumstances shall Defendants' total payment to the Settlement Fund exceed a total of Three Hundred Eighty Thousand Dollars ($380,000.00) and Defendants shall have no obligation to make any payments beyond the $380,000 payments to fund the Settlement Fund.

2.33    **"State Law Claims."** The term "State Law Claims" refers to all wage and hour claims that could have been asserted under New York State law and the regulations thereunder by or on behalf of any one or more Plaintiffs or Class Members, including, but not limited to, all claims under New York labor law for unpaid wages, minimum wages, overtime wages, tip credit claims, tip misappropriation claims, unpaid spread-of-hours claims, service and/or administrative charge claims, improper deductions, Wage Theft Prevention Act penalties, failure to provide required notices and/or wage statements, uniform payment and/or maintenance violation claims, retaliation, any other related wage and hour claims, and all "derivative benefit claims" (defined as claims for

benefits—both ERISA and non-ERISA benefits—resulting from an alleged failure to pay wages, including, but not limited to, minimum or overtime wages), as well as any liquidated damages, interest, attorneys' fees, costs, penalties, taxes, claims administration fees, courts costs and incentive awards related to such claims.

3.    **PROCEDURAL ISSUES**

3.1    **Approval of the Implementing Order.**

A.    Plaintiffs shall file the Preliminary Approval Motion with the Court to, among other things, approve the proposed Implementing Order, publish the proposed Notice of Settlement, and appoint the Administrator jointly selected by the Parties to administer the Settlement.  The proposed Preliminary Approval Motion and Implementing Order shall be drafted by Plaintiffs' Counsel, but subject to comment and approval by Defense Counsel.

B.    The proposed Implementing Order will seek the setting of a 45 day deadline from the initial mailing of the Notice of Settlement to the Class to file Opt-out Statements and/or become Objectors.  To the extent any Notice of Settlement is returned or otherwise determined to be undeliverable, such Class Members shall be entitled to 15 days from the date of any subsequent mailing (but no less than the original 45 days) to file Opt-out Statements and/or become Objectors.  The proposed Implementing Order also shall seek to set a date for the Fairness Hearing, which shall be no earlier than 120 days following the date that the Court enters the proposed Implementing Order.

C.    In connection with the Preliminary Approval Motion, Plaintiffs will inform the Court of the intended process to obtain a "Final Order and Judgment of Dismissal with Prejudice."

D.    The Parties will work together diligently and in good faith to expeditiously obtain an Implementing Order and a Final Order and Judgment of Dismissal with Prejudice.  Any disputes that may arise between the Parties related to the Parties' efforts to obtain an Implementing Order and a Final Order and Judgment of Dismissal with Prejudice shall be submitted to the Court.  Within 15 days of the Fairness Hearing or by the time directed by the Court, Plaintiffs will file an application with the Court requesting a Final Order and Judgment of Dismissal with Prejudice.

E.    Within thirty (30) days after the Court enters the Implementing Order, Defendants, through counsel, shall notify Class Counsel that Defendants have complied with the requirements of 28 U.S.C. § 1715 concerning notifications to appropriate Federal and State officials of this Agreement,

and shall, if requested by Class Counsel, provide proof of such compliance.

**3.2    Administrator.**

A.    *Retention of the Administrator.*  The Parties shall jointly select and engage an Administrator to mail the Notices of Settlement and administer the Settlement.

B.    *Responsibilities of the Administrator.* The Administrator shall be responsible for:

   i.    preparing, printing and disseminating Notices to Class Members;

   ii.    copying counsel for all Parties on material correspondence and promptly notifying counsel for all Parties of any material requests or communications made by any party;

   iii.    promptly furnishing to counsel for all Parties copies of any Opt-out Statements, objections, or other written or electronic communications from Class Members that the Administrator receives;

   iv.    keeping track of Opt-out Statements, including maintaining the original mailing envelopes in which the requests were mailed;

   v.    mailing all required tax forms to Class Members and to Class Counsel as provided herein;

   vi.    setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members and to the *cy pres* designee (as referred to in Paragraph 3.8(A)(v) herein), Plaintiffs' Counsel, and the Claims Administrator;

   vii.    calculating the amount of each Class Member's Settlement Check;

   viii.    calculating, notifying counsel for Defendants of, and paying the required employer payroll taxes and employer contributions (after receiving said amount(s) from Defendants), including specifically paying all applicable payroll taxes, social security payments, Medicare contributions and other payments traditionally borne by the employer due as a result of the Settlement;

   ix.    calculating and paying each Class Member's taxes, deductions and withholdings, and preparing appropriate tax forms for Defendants and for each Class Member;

   x.    mailing the Settlement Checks to Class Members and the *cy pres* designee;

xi.    ascertaining current address and addressee information for all Notices returned as undeliverable and then re-mailing such Notices;

xii.    responding to Class Members' inquiries regarding the procedures for filing objections and Opt-out Statements;

xiii.    referring to Plaintiffs' Counsel all Class Members' inquiries regarding matters not within the Administrator's duties specified herein;

xiv.    responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties as specified herein;

xv.    promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

xvi.    maintaining adequate records of its activities, including the dates that each Notice was mailed, that any returned mail was received, and that any other communications and/or attempted communications with Class Members occurred;

xvii.    confirming in writing to Class Counsel and Defense Counsel its completion of the administration of the Settlement;

xviii.    timely responding to communications from the Parties or their counsel;

xix.    calculating and paying the check to the *cy pres* designee pursuant to Paragraph 3.8(A)(v); and

xx.    any other tasks upon which the Parties mutually agree.

C.    *Administrator Reports*.  No later than 15 days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel: (a) a list of all Class Members; (b) a list of all Class Members who filed timely objections; and (c) a list of all Class Members who requested to opt-out of the Settlement at any time during the Opt-out Period.  The Administrator also shall provide Plaintiffs' Counsel and Defense Counsel with an updated address list for all Class Members.  Throughout the period of claims administration, the Administrator will provide reports to the Parties regarding the status of the mailing of the Notices of Settlement, the distribution of the Settlement Checks, or any other aspect of the claims administration process.

D.    *Access to the Administrator*.  The Parties will have equal access to the Administrator throughout the claims administration period.  Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all information that may assist the Administrator in locating Class Members.

3.3     **The Notice of Settlement.**

    A.    The Notice of Settlement will inform Class Members about the terms of this Agreement and advise them of the opportunity to participate in the Settlement, object to the Settlement, or opt-out of the Settlement.  The Notice of Settlement will also inform Class Members about their potential and/or approximate individual share of the Settlement Fund.

    B.    Within 15 days of the Court's entry of the Implementing Order, Defense Counsel will provide Plaintiffs' Counsel and the Administrator with the Class Member List in electronic form.

    C.    Within 5 days of Defense Counsel providing Plaintiffs' Counsel and the Claims Administrator with the Class Member List, Plaintiffs' Counsel will inform Defense Counsel and the Claims Administrator of any corrections and/or modifications which Plaintiffs' Counsel believes should be made, subject to Defense Counsel's approval.  To the extent Plaintiffs' Counsel and Defense Counsel cannot agree on any proposed corrections and/or modifications, the Parties will submit the dispute to the Court for resolution.

    D.    Within 45 days of the entry of the Implementing Order (or later as may be necessary to resolve any disputes per Paragraph 3.3(C)), the Claims Administrator will mail to all Class Members (*via* email and through First Class Mail through the United States Postal Service) the Notice of Settlement.  The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice of Settlement is returned by the United States Postal Service as undeliverable, including one skip trace, and attempt a re-mailing to any Class Member for whom it obtains a more recent address.  The Claims Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice of Settlement sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice of Settlement returned as undeliverable after any subsequent mailing(s).

3.4     **Opt-Outs.**

    A.    Class Members who choose to opt-out of the Settlement, as set forth in this Agreement, must send *via* First Class Mail through the United States Postal Service (postage to be prepaid) a written, signed statement to the Claims Administrator, providing his or her name, address, telephone number, and statement indicating his or her intention to opt-out of the Settlement (*i.e.*, "I opt-out of Jewel Restaurant wage and hour settlement.").  To be effective, an Opt-out Statement must be postmarked or received by the Claims Administrator within 45 days after the initial mailing of the Notice of Settlement to the Class (also referred to as the Opt-out Period).  However, to the extent any Notice of Settlement is

returned or otherwise determined to be undeliverable, such Class Members shall be entitled to 15 days from the date of any subsequent mailing (but no less than the original 45 days) to file Opt-out Statements.

B.    The Claims Administrator will send a final list of all Class Members who submit Opt-out Statements to Plaintiffs' Counsel and Defense Counsel 15 days before the Fairness Hearing.  The Claims Administrator will retain the stamped originals of all Opt-out Statements and provide copies to Plaintiffs' counsel and Defendants' counsel.

C.    Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the Settlement, including all terms and conditions of this Agreement, will be bound by the Final Order and Judgment of Dismissal with Prejudice, and will have any and all State Law Claims released and dismissed.

D.    In addition to the foregoing, any Class Member who does not submit an Opt-out Statement pursuant to this Agreement and who has previously opted-in to the Action and/or cashes or redeems one or more Settlement Checks will have any and all FLSA Claims released and dismissed.  For the avoidance of any doubt, any Class Member who has not opted-in to this Litigation and/or cashed or redeemed any one or more Settlement Checks shall not release his or her FLSA Claims.

E.    Defendants shall have no obligation to pay any Class Member who opts-out of this Agreement.

**3.5    Objections to the Settlement**

A.    Class Members who wish to present objections to the proposed Settlement at the Fairness Hearing must first do so in writing.  To be considered, written objections must be mailed to the Claims Administrator *via* First Class Mail through the United States Postal Service and postmarked within 45 days after the initial mailing of the Notice of Settlement to the Class.  However, to the extent any Notice of Settlement is returned or otherwise determined to be undeliverable, such Class Members shall be entitled to 15 days from the date of any subsequent mailing (but no less than the original 45 days) to file objections.  The written objection must include all reasons for the objection as well as any supporting documentation.  The written objection also must include the name, address, and telephone number of the Class Member making the objection. The Claims Administrator will stamp the date that the written objection was received on the original and send copies of the objection and any supporting documentation to Class Counsel and Defense Counsel by email delivery no later than 3 days after receipt.

B.     An Objector has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objection at the time that he or she submits his or her written objection.  An Objector may withdraw his or her objection at any time.

C.     The submission of an objection does not constitute the filing of an Opt-out Statement, and, therefore, an Objector continues to be a Class Member.

**3.6    Fairness Hearing and Motion for Final Approval and Dismissal.**

A.     At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted-out of the Settlement; (2) order the Administrator to distribute the Settlement Checks to Class Members and to the *cy pres* designee pursuant to the terms of this Agreement; (3) order the attorneys' fees, expenses, and costs to be paid to Plaintiffs' Counsel out of the Settlement Account in accordance with this Agreement; (4) order Service Awards to be paid out of the Settlement Account; (5) order the Administrator's fees to be paid out of the Settlement Account; (6) order the dismissal with prejudice of all State Law Claims for those Class Members who did not opt-out of the Settlement; (7) order the dismissal with prejudice of all FLSA Claims for those Class Members who redeem/cash a Settlement Check; (8) order the entry of a "Final Order and Judgment of Dismissal with Prejudice" in accordance with this Agreement; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of or related to the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

B.     *Attorneys' Fees, Expenses, and Costs.*  At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed $126,666.66 (1/3 of the Settlement Fund) and for reimbursement of their litigation expenses and costs.  These fees and expenses shall be paid from the Settlement Fund as follows: (i) $33,333.33 from the first payment made pursuant to Paragraph 3.7 below, plus reimbursement of any approved litigation expenses; (ii) $33,333.33 from the second payment made pursuant to Paragraph 3.7 below; (iii) $33,333.33 from the third payment made pursuant to Paragraph 3.7 below; and (iv) $26,666.67 $33,333.33 from the fourth payment made pursuant to Paragraph 3.7 below.  If the Court approves less than the $126,666.66 in attorneys' fees Class Counsel will request, then the above payments shall be made pursuant to the same schedule set forth above on a *pro rata* basis, and any unapproved amounts shall be distributed to Class Members on a *pro rata* basis pursuant to Paragraph 3.8.  Defendants will not oppose this

application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided that the application does not increase the amount of the Settlement Fund.  The substance of Class Counsel's application for attorneys' fees, expenses, and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Agreement and the Parties' good faith in resolving the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses, and costs shall not terminate this Agreement or otherwise affect the Court's final approval.

3.7     **Funding the Settlement Account.**  The Settlement Account shall be funded as follows: no later than 14 days after the Final Effective Date, Defendants shall make a payment of $100,000.00 to the Claims Administrator towards the Settlement Fund.  No later than six months thereafter, Defendants shall make a second payment of $100,000.00 to the Claims Administrator towards the Settlement Fund. No later than six months thereafter, Defendants shall make a third payment of $100,000.00 to the Claims Administrator towards the Settlement Fund.  No later than six months thereafter, Defendants shall make a fourth and final payment of $80,000.00 to the Claims Administrator towards the Settlement Fund.

3.8     **Settlement Checks**

A.     Mailing of Settlement Checks.  The Claims Administrator shall:

(i)     Within 21 days after the Final Effective Date, distribute (a) Settlement Checks comprising the Class Members' Individual Settlement Amounts, as adjusted on a *pro rata* basis among Class Members who do not submit an Opt-out Statement pursuant to this Agreement plus one-quarter of the Minimum Payment as defined in Paragraph 4.1(A) herein; (b) one-half of the Service Awards to the Plaintiffs; and (c) Plaintiffs' Counsel's attorneys' fees and expenses (as set forth above in Paragraph 3.6(B)).  The amount of the Settlement Checks from this first distribution not cashed or redeemed by Class Members within 90 days of distribution will remain in the Settlement Account for future redistribution as set forth in Paragraph 3.8(A)(ii).

(ii)    Within 7 days following the second payment made by Defendants pursuant to Paragraph 3.7, distribute (a) Settlement Checks comprising the Individual Settlement Amounts as adjusted on a *pro rata* basis among those Class Members who cashed or redeemed their Settlement Check from the first distribution, (the "First Distribution Members"), plus one-quarter of the Minimum Payment as

13

defined in Paragraph 4.1(A) herein to the First Distribution Members; (b) one-half of the Service Awards to the Plaintiffs; and (c) Plaintiffs' Counsel's attorneys' fees (as set forth above in Paragraph 3.6(B)).  The amount of any Settlement Checks from this second distribution not cashed or redeemed by First Distribution Members within 90 days of distribution will remain in the Settlement Account for future redistribution as set forth in paragraph 3.8(A)(iii).

(iii)    Within 7 days following the third payment made by Defendants pursuant to Paragraph 3.7, (a) distribute Settlement Checks comprising the Individual Settlement Amounts as adjusted on a *pro rata* basis among those Class Members who cashed or redeemed their Settlement Check from the second distribution (the "Second Distribution Members"), plus one-quarter of the Minimum Payment as defined in Paragraph 4.1(A) herein to the Second Distribution Members; and (b) Plaintiffs' Counsel's attorneys' fees (as set forth above in Paragraph 3.6(B)). The amount of the Settlement Checks from this third distribution not cashed or redeemed by Second Distribution Members within 90 days of distribution will remain in the Settlement Account for future redistribution as set forth in Paragraph 3.8(A)(iv).

(iv)    Within 7 days following the fourth payment made by Defendants pursuant to Paragraph 3.7, distribute (a) Settlement Checks comprising the Individual Settlement Amounts, as adjusted on a *pro rata* basis among those Class Members who cashed or redeemed their Settlement Check from the third distribution (the "Third Distribution Members"), plus one-quarter of the Minimum Payment as defined in Paragraph 4.1(A) herein to the Third Distribution Members; and (b) Plaintiffs' Counsel's attorneys' fees (as set forth above in Paragraph 3.6(B)); and

(v)    Within 150 days following the fourth payment made by Defendants pursuant to Paragraph 3.7, send a check in the amount of the total unclaimed Settlement Funds remaining in the Settlement Account as of that date as a donation from Defendants to the *cy pres* designee mutually agreed to by the Parties.

B.    Participating Class Members.  To receive his or her Settlement Check, a putative Class Member must not opt-out of the Settlement.  All Class Members who do not opt-out of the Settlement will receive Settlement Checks as per Paragraph 3.8(A), be permitted 90 days to cash or redeem

each Settlement Check, and will be subject to the terms of the release set forth herein.

C.    All Settlement Checks shall contain, on the back of each check, the following limited endorsement:

> **CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**
> By endorsing or redeeming this check, I consent to join the FLSA collective action against Defendants styled <u>Parsley, et al. v. Broadhollow Hospitality LLC</u>, No. 17-cv-0097(GRB), and to release Defendants from all wage and hour claims, including but not limited to minimum wage, overtime, and tip credit claims, under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule, or regulation that was alleged or that could have been alleged in the Litigation, up through and including January 8, 2018.
>
> _____    _____
> Signature                               Date

Any modification or amendment of the above language by any Class Member may be accepted or rejected by Defendants, and, if not accepted, Defendants may void the Settlement Check. Defendants have full and complete discretion to accept or reject any such modification or amendment. Defendants shall inform and provide a copy to Plaintiffs' Counsel of any cashed or redeemed Settlement Checks that have been rejected. Moreover, to the extent that a Class Member modifies or amends the above language and Defendants reject such modification and/or amendment and void the Settlement Check, the Administrator will send correspondence to that Class Member: (i) explaining that the Settlement Check was voided; (ii) informing the Class Member that he or she can contact Plaintiff's Counsel for further information; (iii) enclosing a re-issued Settlement Check; and (iv) explaining that the Class Member can redeem the re-issued Settlement Check absent any modification or amendment and present it for payment prior to the expiration of the applicable 90-day period (described in Paragraphs 3.8(A) and 3.8 (B) above). The Administrator shall provide Defendants with a scanned copy of each Settlement Check after it has been redeemed.

**3.9**    **Effect of Failure to Grant Final Approval/Status of Settlement if Case is Not Ultimately Dismissed.** In the event that the Court fails to enter judgment in accordance with this Agreement, or such judgment does not become final as defined herein, this Agreement shall be null and void and the Litigation shall proceed as if no settlement had been attempted. In such case, the Parties will be returned to their respective statuses as of the date immediately prior to the date that the Agreement became fully executed.

**4.**   **SETTLEMENT FUND**

**4.1**   **Settlement Fund Computation and Allocations.**  Class Members' individual, proportionate shares of the Settlement Fund shall be computed in accordance with the formula below:

A.   All Class Members shall be entitled to a minimum payment of $100.00 (the "Minimum Payment") provided that they participate in the Settlement by not timely submitting an Opt-out statement and timely redeem or cash the *pro rata* settlement checks issued to them pursuant to Paragraph 3.8(A)(i-iv).

B.   All Class Members shall each receive 1 point for each hour worked in a tipped position during the Relevant Time Period.

C.   Plaintiffs, Chanchal Bist, Kyle Bowers, Mason G. Connor, Nicolette K. De Martino, Jared M. Delin, Amanda Farnum, Summer Mahmoud, Angela F. McAllister, Madison Giannatasio, and Tanya N. Tabinsky, who each filed opt-in or consent forms in this case, shall receive an addition 0.25 points for each hour worked in a tipped position during the period from January 6, 2014 to January 8, 2018.  This method shall be referred to as the Allocation Formula.

D.   The Settlement Fund, after deductions for Service Awards, Claims Administrator fees, Court-approved attorneys' fees and costs, the Minimum Payment (as defined in Paragraph 4.1(A) above), and any other Court-approved expenses or disbursements (also referred to as the Net Settlement Fund), will be divided by the aggregate number of points accrued by all Class Members (which is also referred to as the Aggregate Point Value).

E.   Each Class Member's total points will be multiplied by the Aggregate Point Value to determine his or her initial allocated share of the Net Settlement Fund (also known as the Class Member's Individual Settlement Amount).

F.   In the Notice of Settlement, each Class Member will be informed of the initial estimated gross amount of his or her Individual Settlement Amount, subject to modification based on such things as any adjustments that need to be made to the data that initially computed the Point Values for the Class Members and/or the redistribution of Settlement Checks not cashed or redeemed (as set forth in Paragraph 3.8(A) above.  The Parties will meet and confer in an attempt to resolve any potential modifications that

impact Class Members' Individual Settlement Amounts.  Any disputes that cannot be resolved will be submitted to the Court.

4.2     **Service Awards.**  Class Counsel shall seek Court approval of the following service awards in consideration for work performed on behalf of the Class:

Kelly Donna Parsley:  $10,000.00

Stephanie Miglino:  $7,500.00

Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the amount of the Settlement Fund.  In the event that the Court inquires about Defendants' position regarding the Service Awards, Defendants will inform the Court that they take no position provided that the Service Awards do not increase the amount of the Settlement Fund.  The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval of the Settlement.

4.3     **Tax Characterization.**

A.      Except as set forth below, pursuant to this Settlement, payments to Class Members will be allocated for tax purposes as follows: (i) 50% in consideration for wage income subject to Internal Revenue Service ("IRS") Form W-2 reporting ("Wage Payments"); and (ii) 50% in consideration for liquidated damages and interest as non-wage payments subject to IRS Form 1099 reporting ("Non-Wage Payments").

B.      All Wage Payments shall be subject to all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS on an IRS Form W-2.  All Non-Wage Payments shall be made without any tax withholdings and shall be reported to the IRS on an IRS Form 1099 issued to each Class Member.  The payment of attorneys' fees and costs shall be made without any withholdings, and Class Counsel shall receive an IRS Form 1099 for this payment.  All Service Awards shall be made without any withholdings and reported to the IRS on an IRS Form 1099.  Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper payments, contributions and tax withholdings (including those required to be paid by an employer, such as payroll taxes) and comply with all tax reporting obligations.

C.      To the extent applicable, Defendants shall be responsible for paying to the Claims Administrator all required employer payroll taxes, contributions, and any other amounts required to be paid by an employer relating to Wage Payments, including but not limited to the employer share of the

FICA tax and unemployment taxes due as a result of the Settlement.  The Claims Administrator shall be responsible for making all employee withholdings that are required pursuant to any federal, state and local tax or regulation and for making all payroll taxes and employer contribution payments (including without limitation all applicable taxes, social security, Medicare contributions, insurance [including unemployment and workers' compensation] and any and all other amounts required to be paid by the employer and are due as a result of the payment of wages pursuant to this Settlement after such is paid by Defendants to the Administrator.

**4.4** **Hold Harmless.**

A.  With respect to all payments made pursuant to this Agreement that are not characterized as wage income subject to IRS Form W-2 reporting, Plaintiffs and Class Members assume full responsibility for any and all federal, state, and local taxes or contributions that may hereafter be imposed or required to be paid in accordance with any federal, state, or local law or regulation.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the IRS or any other federal, state, or local government, administrative agency, or court determines that Defendants and/or any individual or entity are liable for any failure by any Plaintiff, Class Member, and/or Defendant to pay federal, state, or local income, employment, or payroll taxes with respect to any payment made pursuant to this Agreement that is not characterized as wage income subject to IRS Form W-2 reporting, Plaintiffs and Class Members agree to hold Defendants harmless and to indemnify Defendants for any payments that Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS Form 1099 and any Plaintiff's and/or Class Member's failure to pay any taxes that any such individual or entity owes as a consequence of said income.

B.  With respect to payments received pursuant to this Agreement that are characterized as attorneys' fees, costs, or expenses, Class Counsel assumes full responsibility for any and all federal, state, and local taxes or contributions that may hereafter be imposed or required to be paid pursuant to any federal, state, or local law or regulation.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the IRS or any other federal, state or local government, administrative agency, or court determines that Class Counsel is liable for any federal, state, or local taxes or contributions with respect to any payment received pursuant to this Settlement that is characterized as attorneys' fees, costs, or expenses,

Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

5.    **RELEASE AND OTHER TERMS**

   5.1    **Release of Claims.**

      A.    Upon the Court's issuance of the Final Order and Judgment of Dismissal with Prejudice, for and in consideration of the promises of Defendants set forth in this Agreement, including the funding of the Settlement Account to be distributed to the participating Class Members and Class Counsel and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Class Member who does not timely opt-out of the Settlement (regardless of whether such Class Member redeems any Settlement Check) on behalf of himself or herself and on behalf of his or her respective current, former, and future heirs, spouses, executors, administrators, agents, attorneys, and assigns, irrevocably waives, releases, and fully discharges Defendants, Defendants' present, former, and future parents, subsidiaries, affiliates, and related entities, including each of their respective present and former shareholders, members, owners, officers, investors, directors, employees, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, representatives, successors, and assigns, as well as any persons or entities acting in concert with any of them and any individual or entity that could be jointly liable with any of them (collectively, "Releasees") from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints, or suits of any kind that relate to his or her compensation or any wage and hour violations that may have occurred during, arising from, or relating to each Class Member's employment or engagement with Defendants under federal, state, and/or local law from the beginning of the world through the end of the Relevant Time Period, including, but not limited to, any and all claims for unpaid wages, overtime compensation, gratuities, tips, tip credits, tip allowances, service charges, administrative charges, operational charges, other mandatory charges, commissions, improper deductions, travel time, bonuses, penalties, spread-of-hours pay, meal breaks, meal credits, uniform maintenance, uniform reimbursement, expense reimbursement, failure to maintain and furnish employees with proper wage notices and statements, other compensation, wages, or benefits, including, but not limited to, life insurance, accidental death and disability insurance, sick leave, other employer-provided plans or programs, distributions of income or profit, vacation or other leave time, retirement benefits, pension benefits, and any other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including, but not limited to, the Fair Labor Standards Act, New York Labor Law,

New York Code of Rules and Regulations, New York Hospitality Industry Wage Order, New York Restaurant Industry Wage Order, New York Minimum Wage Order for Miscellaneous Industries and Occupations, and New York Wage Theft Prevention Act) and any other State Law Claims, from the beginning of the world through the end of the Relevant Time Period.  This release includes all claims for relief relating to any such released claims, including claims for liquidated damages, punitive damages, penalties, interest, and attorneys' fees, costs, and expenses. Nothing contained in the release set forth in this Paragraph 5.1(A), however, shall preclude any Class Member from pursuing any claims for unemployment insurance benefits or workers' compensation benefits. Moreover, nothing contained in the release set forth in this Paragraph 5.1(A) shall release any Class Member's rights to any vested benefits under any applicable employee benefit plan.

B.    Notwithstanding Paragraph 5.1(A), each Class Member who has neither submitted a timely Opt-out Statement nor redeemed or cashed any Settlement Check shall not release any claims under the Fair Labor Standards Act.  Only Class Members who have timely redeemed and/or cashed any one or more Settlement Checks shall release their respective claims under the Fair Labor Standards Act.  Notwithstanding the foregoing, and to the extent it is not contrary to applicable law, any Class Member who is a Plaintiff or has opted into the Litigation and who does not timely submit an Opt-out Statement waives and releases all FLSA claims against Releasees (in addition to all State Law claims) even if he or she does not redeem any Settlement Checks.

C.    Upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel, Plaintiffs, and Class Members hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against Defendants for attorneys' fees, expenses, or costs associated with Plaintiffs' Counsel's representation of Plaintiffs and Class Members for their claims released pursuant to Paragraph 5.1(A).  Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses, costs and interest associated with Plaintiffs' Counsel's representation relating to the Litigation and this Agreement.

D.    In addition to the waiver and release contained in Paragraphs 5.1(A)-(C) above, in consideration for the Service Awards, each Plaintiff receiving a Service Award knowingly and voluntarily, on behalf of himself or herself and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, attorneys, and assigns, irrevocably waives, releases, and fully discharges Releasees from any and all claims, debts, losses, demands, obligations, liabilities, causes of action,

charges, grievances, complaints, or suits of any kind that may be legally waived by private agreement, whether known or unknown, from the beginning of the world through the through the end of the Relevant Time Period, including, but not limited to: (i) claims arising directly or indirectly from each Plaintiff 's association with Releasees, whether as an employee, independent contractor, or otherwise, and/or the termination of that association; (ii) claims arising directly or indirectly from the actions or inaction of Releasees; (iii) claims under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, Sections 1981 through 1988 of Title 42 of the United States Code, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act, the Immigration Reform and Control Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Credit Reporting Act, the Occupational Safety and Health Act, the Family and Medical Leave Act of 1993, the New York State Human Rights Law, the New York State Civil Rights Law, the New York City Human Rights Law, each as amended, and any other federal, state, or municipal law; and (iv) any other claims, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of each Plaintiff's execution of the Agreement.  This release includes all claims for damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees, expenses, and costs.  Nothing contained in the release set forth in this Paragraph 5.1(E), however, shall preclude any Plaintiff from pursuing any claims for unemployment insurance benefits or workers' compensation benefits.  Moreover, nothing contained in the release set forth in this Paragraph 5.1(E) shall release any Plaintiff's rights to any vested benefits under any applicable employee benefit plan.

5.2     **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred (or purported to assign or transfer) to any person or entity any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation or any related action.

5.3     **No Admission of Liability.**  By entering into this Agreement, Defendants do not admit and expressly deny any violation of law or any liability whatsoever to Plaintiffs and/or Class Members, individually or collectively, or to anyone else as a result of or growing out of the matters set forth in the complaint filed in the Litigation.  Likewise, by entering into this Agreement, Defendants do not admit to

the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and Class Members.  The settlement of the Litigation, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or as an admission or evidence of the truth of any of the factual allegations in the Complaint filed in the Litigation; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and that it shall be inadmissible as evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

**5.4** **Communications Relating to the Settlement**. Plaintiffs, Class Counsel, Defendants, and Defense Counsel agree that they will not issue, send, or post, or cause to be issued, sent, or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blog, or social networking site (including, but not limited to, Facebook, LinkedIn, Instagram, and Twitter) regarding the Parties' settlement discussions and/or the facts and events leading up to the settlement.  Notwithstanding the terms of this Paragraph 5.4, the Parties shall be free to make whatever disclosures relating to the Litigation that they deem appropriate to their attorneys, financial advisors, and tax advisors, provided that those disclosures are truthful. Defendants also shall be free to make whatever disclosures relating to the Litigation that they deem appropriate to their members, officers, shareholders, directors, and/or other relevant stakeholders.  Nothing herein shall prevent or limit Class Counsel or the Administrator from communicating with Class Members. This provision is enforceable to the extent it does not conflict with the New York Rules of Professional Conduct, or the ABA Model Code of Professional Responsibility, or any other applicable rule governing ethical standards of the practice of law.  To the extent that the Court does not approve the terms set forth in this paragraph or modifies them in any way, the remainder of the settlement terms will remain enforceable.

## 6. INTERPRETATION AND ENFORCEMENT

**6.1** **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2     Interpretation.**  Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, and the Parties agree to take any and all steps which are necessary in order to enforce the provisions hereof.

**6.3     No Other Representations.**  Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any Party or Parties, agents, representatives, or attorneys to induce the execution of this Agreement.

**6.4     Binding Agreement.**  This Agreement is a binding agreement, contains all material agreed-upon terms.

**6.5     Entire Agreement.**  This Agreement is an integrated contract that constitutes and contains the entire agreement between the Parties with regard to the subject matter contained herein and supersedes and replaces all prior negotiations and agreements, proposed or otherwise, written or oral, concerning the subject matter contained herein.  All prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.6     Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**6.7     Arm's Length Transaction; Materiality of Terms.**  The Parties have negotiated all of the terms and conditions of this Agreement at arm's length.  All of the terms and conditions of this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.8     Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.9     Construction.**  The determination of the terms and conditions of this Agreement was by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and, therefore, the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**6.10     Severability.**  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable (other than Paragraph 5.1), the remaining provisions of this Agreement shall continue in full force and effect.

6.11    **Governing Law.**  The rights and obligations of the Parties set forth in this Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to conflict of laws principles.

6.12    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.  However, if the Court should refuse or decline to accept jurisdiction over the Settlement for any reason, the Parties agree that this Agreement may be enforced in any court of competent jurisdiction located in the State of New York, County of Suffolk.  The Court's refusal to retain jurisdiction over the Settlement shall not void or otherwise effect this Agreement.

6.13    **Waivers, Modifications, and Amendments.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in a writing signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement.  Notwithstanding any such failure, such party shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.14    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution by Plaintiffs, subject to final approval by the Court.  The Parties may execute this Agreement in counterparts, which, when taken together, shall constitute a complete agreement.  Each counterpart shall have the same validity, force, and effect as if all Parties had signed the same instrument.

6.15    **Facsimile and Email Signatures.**  Any party may execute this Agreement and cause its counsel to transmit its executed signature page *via* facsimile or email to counsel for the other party.  Any signature transmitted by facsimile or email shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

6.16    **General Acknowledgements.**  It is understood and agreed that the Settlement Fund and the other good and valuable consideration provided for herein are not a mere recital but are the consideration for this Agreement and all terms herein, including the full and final release effected thereby.  The Parties represent and warrant that all payments made from the Settlement Fund to Plaintiffs, Class

Members, and Class Counsel are fair and reasonable. The Parties represent and warrant that they are entering into this Agreement of their own free will and accord after consultation with their attorneys. The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

**6.17    Additional Representations and Warranties.** The Parties represent and warrant to each other that the execution and delivery of this Agreement has been duly authorized by each of the Parties, that the persons signing this Agreement on their behalf below have been fully authorized to do so, and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officers to execute, this Agreement as of the dates set forth below.

_____          6/12/18
Lawrence M. Pearson, Esq.                 Date
For Plaintiffs' Counsel
*As to Paragraph, 4.4(B), 5.1 (C) & 5.4*


_____          _____
Kelly Donna Parsley                       Date

_____          3/7/18
Stephanie Miglino                         Date


_____          _____
Broadhollow Hospitality LLC               Date
d/b/a Jewel Restaurant

By: _____
Title: _____


_____          _____
Rubies Costume Company, Inc.              Date

By: _____
Title: _____


Meyer, Suozzi, English & Klein, P.C.      _____
                                          Date

By: _____
        Andrew J. Turro Esq.
*As to Paragraph 5.4*

25

IMANAGE 4058509v.7

Members, and Class Counsel are fair and reasonable. The Parties represent and warrant that they are entering into this Agreement of their own free will and accord after consultation with their attorneys. The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

**6.17** **Additional Representations and Warranties.** The Parties represent and warrant to each other that the execution and delivery of this Agreement has been duly authorized by each of the Parties, that the persons signing this Agreement on their behalf below have been fully authorized to do so, and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officers to execute, this Agreement as of the dates set forth below.

_____     Date
Lawrence M. Pearson, Esq.
For Plaintiffs' Counsel
*As to Paragraph 4.4(B), 5.1(C) & 5.4*

_____     3/6/18
Kelly Donna Paisley          Date

_____     Date
Stephanie Miglino

_____     Date
Broadhollow Hospitality LLC
d/b/a Jewel Restaurant

By: _____
Title: _____

_____     Date
Rubies Costume Company, Inc.

By: _____
Title: _____

Meyer, Suozzi, English & Klein, P.C.     _____
                                          Date

By: _____
        Andrew J. Turro Esq.
*As to Paragraph 5.4*

25

Members, and Class Counsel are fair and reasonable. The Parties represent and warrant that they are entering into this Agreement of their own free will and accord after consultation with their attorneys. The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

6.17   **Additional Representations and Warranties.** The Parties represent and warrant to each other that the execution and delivery of this Agreement has been duly authorized by each of the Parties, that the persons signing this Agreement on their behalf below have been fully authorized to do so, and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

**IN WITNESS WHEREOF,** the Parties hereto have executed, or caused their duly authorized officers to execute, this Agreement as of the dates set forth below.

_____        _____
Lawrence M. Pearson, Esq.                        Date
For Plaintiffs' Counsel
*As to Paragraph, 4.4(B), 5.1 (C) & 5.4*


_____        _____
Kelly Donna Parsley                                     Date


_____        _____
Stephanie Miglino                                        Date

                                                              3/13/18
_____        _____
Broadhollow Hospitality LLC                     Date
d/b/a Jewel Restaurant

By: _Tom Schwob_
Title: _Chief Owner_

                                                              3/13/18
_____        _____
Rubies Costume Company, Inc.                    Date

By: _Joseph Sacevolello_
Title: _Global CFO_

                                                              3/23/18
Meyer, Suozzi, English & Klein, P.C.          Date

By: _____
         Andrew J. Turro Esq. FOR DEFENDANTS' COUNSEL
*As to Paragraph 5.4*

25

IMANAGE 4058509v.7